**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> MARIA LARIOS-TRUJILLO, ) <br> ) <br> Defendant. ) <br> ) | Criminal No. <br> 05-40020-FDS |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

**SAYLOR, J.**

Defendant Maria Larios-Trujillo pleaded guilty on May 14, 2007, to charges of conspiracy to distribute cocaine and marijuana and possession of cocaine with intent to distribute. The change of plea occurred on the first day of trial, after the jury had been empaneled, but before testimony had been taken. She now has moved to withdraw her plea pursuant to Fed. R. Crim. P. 11(d) on the grounds that the plea was not knowing, intelligent, and voluntary. For the reasons set forth below, the motion will be denied.

**I.  Background**

On April 14, 2005, a grand jury returned an indictment against Maria Larios-Trujillo and thirteen other individuals, all of whom were alleged to have taken part in an extensive drug-trafficking conspiracy. The indictment charged Larios-Trujillo with conspiracy to distribute marijuana and cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).

One of the thirteen other defendants has been found incompetent to stand trial; the

remaining twelve defendants have pleaded guilty to the charges. Defendant Larios-Trujillo, however, initially exercised her right to go to trial.

The trial began as scheduled on May 14, 2007. The jury was empaneled on the first day. The jury was sworn, but did not hear opening statements or receive any evidence. Toward the end of the empanelment process, defendant Larios-Trujillo indicated a change of heart and a desire to plead guilty. The Court responded that it would not discharge the jury until the empanelment process had been completed, but if the defendant wished to, she could plead guilty that afternoon.

Accordingly, after the jury had been sent home, and beginning at approximately 2:00 p.m., the Court conducted a plea colloquy. At the conclusion of the colloquy, defendant changed her plea to "guilty." Defendant was somewhat emotional during the change of plea (as she had been during the empanelment process) and broke down in tears on several occasions.

During the course of the colloquy, the Court asked the defendant, "Have you been treated recently for any mental illness or psychiatric or psychological problems of any kind?" Larios-Trujillo responded in the affirmative, at which point her counsel asked permission to approach sidebar and make a statement *ex parte*. Counsel then advised the Court that he had learned "a couple of months ago" that she had been treated at Heywood Hospital for "some psychological disorder." He then reported that he had obtained the records and found that she had been diagnosed for depression with "some auditory hallucinations" more than ten years ago. Counsel (who was court-appointed) had filed a motion at the time for funds for a psychologist to determine whether she was competent to stand trial. The Court approved the motion and he retained a psychologist; however, the psychologist was not able to interview the defendant due to

her transfer from the facility at MCI Framingham to the Wyatt detention center. Nonetheless, counsel reported that he "concluded that based on my dealings with her that there was no question of competency," and that "there is no doubt in my mind that she is competent, and these—her psychological issues that she has brought up with Your Honor go back ten years . . . ."

The Court then asked Larios-Trujillo in open court whether she had been treated for depression; she responded that she had been treated for about a year and that she had had an issue with auditory hallucinations. She reported that she was still being given medication as part of her mental health treatment, although she did not remember what it was; when the Court asked whether she was able to "think clearly," she responded, "I believe so." The Court then asked "Do you understand what is going here today?" to which the defendant responded, "Yes."

The Court then engaged in the following colloquy with Larios-Trujillo:

> THE COURT: Ms. Larios Trujillo, are you having any trouble understanding my questions?
>
> THE DEFENDANT: No.
>
> THE COURT: And I understand that you are upset and that you're sad, but are you able to follow what's going on here?
>
> THE DEFENDANT: (No response.)
>
> THE COURT: Are you able to understand what we're doing here?
>
> THE DEFENDANT: Yes.

At the conclusion of the colloquy, the Court found that the plea was knowing, voluntary, and intelligent, and accepted the plea. Sentencing is presently set for September 21, 2007.

Larios-Trujillo has now moved to withdraw her guilty plea, contending that the plea was *not* knowing, intelligent, and voluntary. She has submitted an affidavit in support of the motion,

which indicates, in substance, that she was very nervous when she went to court on May 14; that in the elevator that morning, one of the guards told her "that it was good that I was going to trial," which upset her because she thought he meant that she would not win the trial; that she saw that the courtroom was full of people, who she thought were detectives, which made her "even more nervous"; that as the morning went on, she started to cry and she developed a nosebleed; and that she saw various members of her family in court who were also crying. (Def. Aff. ¶¶ 7-12). She further states that "as the morning wore on, my determination to go to trial began to waiver even though I still believed that I was not guilty of the crimes that I was charged with." (Def. Aff. ¶ 12).

With the motion, defendant also filed a report from Robert H. Joss, Ph.D., a licensed psychologist. According to Dr. Joss's report, he interviewed Larios-Trujillo on two occasions after her guilty plea and reviewed her medical and mental health records from the period of her detention and from her treatment at Heywood Hospital in September 1996. Dr. Joss opined that "Ms. Larios Trujillo is at baseline depressed and in times of stress, is prone to be increasingly vigilant about her own safety and about the safety of family members." (Joss Report at 5). He concluded that "her plea was a response to her misreading her situation and was neither intelligent (i.e., considering the options available to her in a calm and deliberative fashion) nor voluntary in the sense that she felt compelled to plea in order to immediately end her personal stress and satisfy her vigilance for protection of family members." (Joss Report at 6).

In its opposition, the government submitted transcripts of recorded telephone

conversations made by the defendant from jail awaiting sentencing.[1]  According to the government, defendant made 79 completed calls between May 14 and August 6, 2007, to her boyfriend or family members, and "never once complained that anxiety, depression, or fear compelled her to plead guilty, or that she was in fact innocent of the charges." (Opp. Def. Mtn Withdraw Plea at 2).  The government also detailed plea discussions that had occurred with defense counsel over a period of several months before the commencement of the trial.   (Opp. Def. Mtn Withdraw Plea at 3-4).

## II.   Analysis

A defendant does not have an absolute right to withdraw a guilty plea.  *United States v. Rodriguez-Leon*, 402 F.3d 17, 22 (1st Cir. 2005).  Rather, a defendant may withdraw a plea of guilty only if he or she can show "a fair and just reason" for requesting the withdrawal.  Fed. R. Crim. P. 11(d)(2)(B).  The burden of persuasion rests with the defendant.  *Rodriguez-Leon*, 402 F.3d at 22.

The First Circuit has identified several factors that must be considered in determining whether a defendant has shown a "fair and just reason" for withdrawing a plea,

> the most significant of which is whether the plea was knowing, voluntary, and intelligent within the meaning of [Federal Rule of Criminal Procedure 11].  The other factors include 1) the force and plausibility of the proffered reason; 2) the timing of the request; 3) whether the defendant has asserted his legal innocence; and 4) whether the parties had reached a plea agreement.

*Id.* at 22 (citations omitted).  If those factors weigh in favor of permitting a change of plea, the Court must then consider the prejudicial effect such a change would have on the prosecution.  *Id.*

---

[1] The government did not submit complete translations or transcripts of the telephone calls, which were in Spanish, although it represented that copies of the recordings themselves have been provided to defense counsel. (Opp. Def. Mtn. Withdraw Plea at 3 n. 1).

5

The Court begins its analysis by noting that it has already concluded, at the time of the change of plea, that the plea was knowing, voluntary, and intelligent.  *See* Fed. R. Crim. P. 11(b)(2) (plea must be "voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."); *see also, e.g., United States v. Padilla-Galarza*, 351 F.3d 594, 597 (1st Cir. 2003) (whether the plea was voluntary, intelligent, and knowing is relevant to consideration of motion for plea withdrawal) (citations omitted); *United States v. Aker*, 181 F.3d 167, 170 (1st Cir. 1999) (primary concern for allowing withdrawal of plea was whether original guilty plea was knowing, intelligent, and voluntary under Fed. R. Crim. P. 11) (citations omitted). Defendant contends nonetheless that her change of plea was in fact *not* voluntary and intelligent, due to her mental state at the time.  In substance, she contends that she suffered at the time from depression and emotional strain, which "compelled" her to plead guilty.  (Memo. Supp. Mtn. Withdraw Plea at 2).

Defendant was, without question, very emotional on the morning that the jury was empaneled, and throughout the plea colloquy that afternoon.  She was in tears on several occasions, and on one occasion needed to be prompted to respond to the Court's questions.  The Court also has no reason to doubt that defendant suffers from depression and has (at least in the past) experienced auditory hallucinations.  Nonetheless, the Court cannot conclude that her mental state was sufficient to render the plea involuntary and not intelligent, or that the defendant has otherwise established a "fair and just reason" for withdrawing the plea.

The standard for determining competency to plead guilty is the same as the standard for determining whether a defendant is competent to stand trial:  a defendant must be able to understand the proceedings against her and have sufficient present ability to consult with her

6

lawyer with a reasonable degree of rational understanding. *Godinez v. Moran*, 509 U.S. 389, 398, 113 S.Ct. 2628 (1993); *Rodriguez-Leon*, 402 F.3d at 22. The Rule 11 colloquy with the defendant gives no indication that the defendant did not know what she was doing, did not understand the proceedings, or that she was not able to rationally understand her consultations with her attorney. The Court asked her specifically, on several occasions, whether she understood what was going on, and she responded in the affirmative. She gave no indication of a lack of understanding or awareness at any time. Her own counsel stated that there was "no doubt" that she was mentally competent. Indeed, her psychologist did not opine that she is incompetent or could not understand what she was doing; rather, he opined that she did not act intelligently because she did not consider the options available to her in a calm and deliberative fashion, nor voluntarily "in the sense that she felt compelled to [plead] in order to immediately end her personal stress and satisfy her vigilance for protection of family members." (Joss Report at 6).

The Court finds the proffered reason plausible to a certain extent—certainly the defendant was emotional and distraught, which undoubtedly affected her judgment—but implausible to the extent defendant claims she was not mentally competent. While depression may, of course, be debilitating under some circumstances, there is no evidence that defendant was depressed to such a degree that she could not understand what was happening or make a knowing and voluntary choice among her options. *See Aker*, 181 F.3d at 171 (defendant not permitted to withdraw plea based on claim of depression).

As to defendant's claim of innocence, the assertion is dubious at best. Twelve of her thirteen co-defendants have pleaded guilty, and the one who did not was declared incompetent to

7

stand trial.  There appears to be substantial evidence against her; among other things, her voice was captured on recorded telephone calls.  Her counsel attempted at some length to negotiate a plea with the government, which is inconsistent with a claim of innocence.  And she apparently did not mention her claim of innocence to her friends or family at any point during the recorded telephone conversations from jail.  While defendant of course does not bear any burden of proof as to the underlying charges, she does bear the burden of proving that her plea of guilty should be withdrawn, and she has not come forward with any substantial evidence of innocence other than a general denial.

The remaining factors do not contribute substantially to the analysis.  As for the timing of the request, it is not inherently suspect, as it would be had she waited to see what her sentence was before seeking to withdraw the plea.  Similarly, there was no plea agreement with the government.  Those factors, accordingly, do not cut against the defendant, although they are not enough, standing alone, to overcome the weight of the other factors.

Finally, defendant's request is at least mildly prejudicial to the government:  the defendant pleaded guilty on the first day of trial, after the government had prepared its case, organized its evidence, and summoned the necessary witnesses, and after the jury had been selected.  The Court is nonetheless confident that the government could try the case if necessary, and the prejudice is accordingly not substantial.

The Court recognizes fully that a plea of guilty is an emotionally-charged event, and that it is often difficult for defendants to be completely rational, calm, and clear throughout that process.  The plea colloquy is, nevertheless, not simply window-dressing.  Defendant cannot repudiate her answers to those questions simply because she has had a change of heart, or because she

experienced significant emotional turmoil and stress at the time or thereafter. Her claims of incompetency are not supported by the evidence, and accordingly there is no "just and fair reason" for permitting her to withdraw her plea.

## III.     Conclusion

For the foregoing reasons, defendant's motion to withdraw her guilty plea is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: September 20, 2007